UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
IN RE GITTO GLOBAL          )
CORPORATION,                )
                            )
              Debtor,       )
_____ )
                            )
GARY GITTO, CHARLES GITTO,  )
and TRADEX CORPORATION,     )
                            )
              Appellants,   )
                            )          CIVIL ACTION NOS.
        v.                  )          05-10334-DPW
                            )          05-10532-DPW
WORCESTER TELEGRAM & GAZETTE, )
CORP.; MEDIANEWS GROUP, INC.; )
CHARLES L. GLERUM, EXAMINER;  )
and PHOEBE MORSE, UNITED      )
STATES TRUSTEE,             )
                            )
              Appellees.    )
_____
```

MEMORANDUM AND ORDER
May 2, 2005

Several news organizations seek access to a report submitted under seal by a statutorily appointed Examiner to the Bankruptcy Court regarding fraud in the conduct of the affairs of a debtor. The Bankruptcy Judge, after carefully weighing the respective interests of persons and entities whose alleged activities were mentioned in the Report, ordered that it be publicly disclosed. In this appeal by certain of those mentioned, I affirm the Bankruptcy Judge's decision.

## I.  BACKGROUND

On September 24, 2004, Gitto Global Corporation ("Debtor")
filed for Chapter 11 bankruptcy.  The Bankruptcy Court appointed
an Examiner on October 19, 2004 and ordered that "the Examiner
shall immediately begin an investigation into the existence of
any prepetition fraud, dishonesty, incompetence, misconduct,
mismanagement, or irregularity in the management and business
affairs of the Debtor."  After conducting an investigation, the
Examiner filed his Report under seal on January 7, 2004 pursuant
to the Bankruptcy Court's January 5, 2004 Order Regarding the
Report of the Examiner.  In that Order, the Bankruptcy Court also
established a procedure whereby parties could seek to have all or
part of the Report remain under seal.[1]

After the Examiner filed his Report and served redacted
copies on approximately 120 individuals, the Bankruptcy Court
received motions requesting that the Report remain under seal in
whole or part, as well as motions from those seeking access to
the Report.  Following a hearing on the various motions, the
Bankruptcy Court concluded in a Memorandum dated February 9, 2005
that essentially the entire Report[2] should be made available to

---

[1]The Bankruptcy Court's January 5 order directed that the
Examiner "provide each person named in the report, or referenced
in such a fashion that the Examiner reasonably believes such a
person could be identified, with a copy of only that portion or
portions of the report that relate to the individual."  (Bankr.
Ct. Mem., at 1.)

[2]The Bankruptcy Court deemed bank account numbers to be
confidential information and ordered that they be redacted from
the Report.  (Bankr. Ct. Mem., at 12-13.)

the public.

Appellants, Gary Gitto in Civil Action No. 05-10334, and Charles Gitto and Tradex Corporation in Civil Action No. 05-10532, appeal that decision.[3]  I continued the limited stay allowed by the Bankruptcy Court to provide the opportunity for meaningful appellate review and set an expedited schedule for briefing and argument.  Persons and entities other than appellants appeared to register objections and were heard at argument of the appeal.  For the reasons stated below, I affirm the Bankruptcy Court's ruling that the public have access to the Report.

## II.  STANDARD OF REVIEW

When a District Court reviews a decision of the Bankruptcy Court, findings of fact are upset only if clearly erroneous and questions of law of subject to de novo evaluation.  See Fed. R. Bankr. P. 8013; Sir Speedy, Inc. v. Morse, 256 B.R. 657, 658 (D. Mass. 2000) (citing In re Winthrop Old Farm Nurseries, Inc., 50 F.3d 72, 73 (1st Cir.1995)).  A discretionary decision of the Bankruptcy Court is overturned only when there has been abuse of that discretion.  Neal Mitchell Assocs. v. Braunstein, 227 B.R. 1, 6 (1st Cir. 1998).

---

[3]Charles Gitto and Tradex Corporation filed an appeal separate from that of Gary Gitto.  Considering the common issues and the fact that Charles Gitto and Tradex Corporation purports to "adopt and incorporate by reference" the arguments of Gary Gitto, I have consolidated the cases on appeal.

## III.  DISCUSSION

### A. Bankruptcy Examiner

The power to appoint a bankruptcy examiner is found in 11 U.S.C. § 1104(c), which provides that an examiner "conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor."[4]  The duties of a bankruptcy

---

[4]In their entirety, 11 U.S.C. §§ 1104(c) and (d) provide:

> (c)  If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if –
>> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.
> (d)  If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one

examiner are defined further in 11 U.S.C. § 1106 which provides
that "[a]n examiner . . . shall perform the duties specified in
paragraphs (3) and (4) of subsection (a) of this section . . . ."
Those paragraphs direct that:

    (a) A trustee shall --

* * *

        (3)  except to the extent that the court orders
otherwise, investigate the acts, conduct, assets,
liabilities, and financial condition of the
debtor, the operation of the debtor's business and
the desirability of the continuance of such
business, and any other matter relevant to the
case or to the formulation of a plan;

        (4)  as soon as practicable –

            (A) <u>file</u> a statement of any investigation
conducted under paragraph (3) of this
subsection, including any fact ascertained
pertaining to fraud, dishonesty,
incompetence, misconduct, mismanagement, or
irregularity in the management of the affairs
of the debtor, or to a cause of action
available to the estate; and
(B) transmit a copy or a summary of any such
statement to any creditors' committee or
equity security holders' committee, to any
indenture trustee, and to such other entity
as the court designates . . . .

11 U.S.C. §§ 1106(a)(3) & (4) (emphasis added).

    The role of a bankruptcy examiner is unique.

    An Examiner's legal status is unlike that of any other
court-appointed officer which comes to mind.  He is
first and foremost disinterested and nonadversarial.
The benefits of his investigative efforts flow solely

---

        disinterested person other than the United States
trustee to serve as trustee or examiner, as the
case may be, in the case.

-5-

to the debtor and to its creditors and shareholders,
but he answers solely to the Court.

In re Baldwin United Corp., 46 B.R. 314, 316 (Bankr. S.D. Ohio
1985).  In analogizing the singular status of the bankruptcy
examiner, courts have compared the role to that of a special
master, see In re Continental Airlines, 150 B.R. 334, 342 (D.
Del. 1993) (fee reviewer), a "civil grand jury," Baldwin, 46 B.R.
at 316-17 (observing that the examiner's "findings do not have
the binding effect on the Court or parties of those of a special
master, arbitrator or magistrate; nor do they have the
evidentiary character of an opinion by a Court expert"), and as
"limited to that of investigator and mediator," In re Apex Oil
Co., 101 B.R. 92, 93 (E.D. Mo. 1989).  See In re Ionosphere
Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993) ("The
investigation of an examiner in bankruptcy, unlike civil
discovery under Rule 26(c), is supposed to be a 'fishing
expedition,' as exploratory and groping as appears proper to the
Examiner.").

Those analogies would have a greater role in suggesting
lines of analysis regarding access to the Examiner's Report if
the Bankruptcy Courts, and this court in review, were in the
first instance charged with determining whether the Report enjoys
a presumption of public access.  As will be discussed below,
however, Congress has greatly simplified that analysis in the
bankruptcy setting by establishing such a presumption by statute.

Consequently, the questions I will address are:

(1)  whether, under the Code, the Bankruptcy Court erred as a matter of law in determining that the instant Report is a document to which access is presumed; finding that it did not, I then address

(2)  whether the Court erred in its definition of "defamatory" or abused its discretion in failing to recognize an exception in this case to the presumed public access to the Report.

### B.  Presumption of Public Access

In order to place the issues in a broad context, I begin my approach to the questions here from the perspective of the non-statutory law of access to judicial records.  There is a "presumption of public access to 'judicial records' under the common law."  In re Boston Herald, Inc., 321 F.3d 174, 189 (1st Cir. 2003) (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978)); see id. at 180 ("Both the constitutional and the common law rights of access have applied only to judicial documents.") (citing El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 495 (1st Cir. 1992)).  The First Circuit "has often used a definition of 'judicial record' which refers to 'materials on which a court relies in determining the litigants' substantive rights.'"  Id. at 189 (citing In re Providence Journal, 293 F.3d 1, 16 (1st Cir. 2002)).  Cf. United States v. Amodeo, 44 F.3d

141, 145 n.9 (2d Cir. 1995) ("Amodeo I") ("We think that the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.").  By contrast, "[t]hose documents which play no role in the adjudication process" are not covered by the common law presumption of public access.  Fed. Trade Comm'n v. Standard Financial Mgmt. Corp., 830 F.2d 404, 408 (1st Cir. 1987).

A framework for analysis of a First Amendment right of public access has been developed in criminal proceedings.  See generally Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980).  In a criminal case presenting the question of public access to documents filed by the defendant in support of his request for Criminal Justice Act funds, the First Circuit provided the following summary of the proper approach "to determine if a constitutional right of access applies to particular documents":

> First, we look at whether materials like these . . . documents have been open to the public in the past, "because a tradition of accessibility implies the favorable judgment of experience."  Second, we ask "whether public access plays a significant positive role in the functioning of the particular process in question."

Boston Herald, 321 F.3d at 182 (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8 (1986) ("Press-Enterprise II")).[5]

---

[5] "Some courts have treated these considerations as a two-prong test, with a pair of elements that must both be satisfied.

Although these considerations could be applied to the Examiner's
Report, looking to "analogous proceedings and documents" for
purposes of the first inquiry and assessing the Reports "positive
functional role" for the second, see id. at 184-89, this is
unnecessary in the statutory context for bankruptcy proceedings.

The purpose of making such inquiries under the common law
and the Constitution is to determine whether a document enjoys
the presumption of public access.  But Congress has supplanted
that approach under § 107 of the Bankruptcy Code.  See In re
Orion Pictures Corp., 21 F.3d 24, 26 (2d Cir. 1994) ("policy of
open inspection, codified generally in § 107(a) of the Bankruptcy
Code, evidences congress's strong desire to preserve the public's
right of access to judicial records in bankruptcy proceedings");
In re Phar-Mor, Inc., 191 B.R. 675, 678 (Bankr. N.D. Ohio 1995)
("plain reading of § 107 shows that Congress indeed promulgated
an express statutory scheme addressing public access to papers in
bankruptcy cases in enacting § 107(a)"); Continental, 150 B.R. at
337.  Consequently, whether Examiner Reports are "judicial
documents" as defined in the common law or the Constitution is
strictly speaking not material where, as here, Congress has
actually mandated filing of the Report itself.[6]

---

. . . .  We are unpersuaded that this is the correct reading of
the 'complementary considerations' of Press-Enterprise II."
Boston Herald, 321 F.3d. at 182.

    [6]Indeed, I recognize approaching the question of access to
the Examiner's Report from the perspective of constitutional or

Section (a) of 11 U.S.C. § 107 provides for public access to all bankruptcy filings:

> Except as provided in subsection (b) of this section, a paper <u>filed</u> in a case under this title [11 U.S.C. § 101, <u>et seq.</u>] and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a) (emphasis added).  The provision is meant to cover <u>all</u> papers filed.  <u>See</u> House Judiciary Report, H. Rept. No.

---

common law principles may even tend to confuse the overall issue in this setting.  Absent an argument that § 107 violates the Constitution, reliance on the common law approach to judicial records -- which is more limited than the provisions of § 107 -- would effectively, if indirectly, displace the effectiveness of Congress's decision to establish clear presumption of access to filed bankruptcy documents.  <u>See</u> <u>In re Phar-Mor, Inc.</u>, 191 B.R. 675, 679 (Bankr. N.D. Ohio 1995) ("Section 107 codified the Supreme Court's <u>Nixon</u> decision in the bankruptcy setting by recognizing the common-law right of public access, subject to the limited exceptions of confidential commercial information and scandalous or defamatory material.").

Separate judicial analysis using the common law and constitutional analytical constructs to determine whether the Report is part of the "judicial record" is thus unnecessary.  The statutory law, at least as to the initial question of the presumption of access, is clear.  The multi-layered constitutional and common law arguments offered by all the parties here have consequently been somewhat out of focus.  Indeed, even when applicable, those analytical approaches require a concern for distinctions not always reflected in the case law.  As Judge Lipez pointed out in his dissent to the <u>Boston Herald</u> decision, "there are important differences between the [First Amendment and common law] rights of access," <u>Boston Herald</u>, 321 F.3d at 197 (Lipez, J., dissenting), yet "courts have employed much the same type of screen in evaluating" the two rights, <u>Providence Journal</u>, 293 F.3d at 10.  In any event, where, as here, Congress has supplanted constitutional and common law analysis, injecting these layers in the analytical construct is unnecessary and potentially misleading.  The analytical approach of constitutional and common law analysis, however, helps define the context and will prove instructive when turning to the availability of exceptions to § 107(a) under the Bankruptcy Code scheme for access to the Examiner's Report.

95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), <u>in</u> Notes to 11 U.S.C. § 107 (stating that § 107(a) "makes all papers filed in a bankruptcy case and the dockets of the bankruptcy court public and open to examination at reasonable times without charge"); William T. Bodoh & Michelle M. Morgan, <u>Protective Orders in the Bankruptcy Court: The Congressional Mandate of Bankruptcy Code Section 107 and its Constitutional Implications</u>, 24 Hastings Const. L.Q. 67, 82 (1996) ("[T]he subsection 107(a) presumption of public access appears to have sweeping coverage over any and all items filed with the bankruptcy court.").[7]

This sweeping provision reflects Congressional embrace of the public's interest in access to information generated by bankruptcy proceedings, an interest triggered at the moment a petition is filed:

> A bankruptcy filing is highly pertinent information to commercial enterprises in the geographic area where the debtor resides. Businesses must make daily decisions

---

[7]Although not at issue here, it is worth noting that the statutory presumption does not attach to underlying documents relied upon by the Examiner in compiling the Report but not filed with the court. <u>See</u> <u>In re Ionosphere Clubs, Inc.</u>, 156 B.R. 414, 435 (S.D.N.Y. 1993) ("The public interest is in the Report and the Examiner's conclusions, not in the Record upon [which] the conclusions are based."); <u>In re Apex Oil Co.</u>, 101 B.R. 92, 98 (Bankr. E.D. Mo. 1989) ("This Court determines that the Underlying Documents are not subject to § 107(a) because they have not been, and will not be, filed. The plain language of § 107 establishes standards only for those documents <u>which are filed with the court</u>.") (emphasis in original). Consequently, any effort to support closure by comparison of the Report -- as distinct from the underlying documents -- with discovery materials in a civil action is unavailing.

> about entering into credit transactions with members of
> the public.  The legitimate financial interests of
> businesses will be frustrated if the filing of a
> bankruptcy case is maintained on a confidential basis.
> The need of the public to know of the filing of the
> bankruptcy case, and the right of the news media to
> obtain and publish this information outweighs the
> debtors' desire to avoid the embarrassment and
> difficulties attendant to the filing of bankruptcy.

Matter of Laws, 223 B.R. 714, 714-715 (Bankr. D. Neb. 1998); see

In re Foundation for New Era Philanthropy, 1995 WL 478841, at *4

(Bankr. E.D. Pa., May 18, 1995) ("To at least some extent, this

statutory directive for open access flows [from] the nature of

the bankruptcy process -- which is heavily dependent upon

creditor and public participation, and which requires full

financial disclosure of the debtor's affairs."); In re Bell &

Beckwith, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984) ("This policy

of open inspection, established in the Bankruptcy Code itself, is

fundamental to the operation of the bankruptcy system and is the

best means of avoiding any suggestion of impropriety that might

or could be raised.").

     Notwithstanding appellants' creative arguments to the

contrary, the § 107(a) presumption and the public's interest

attaches to the Report.  Not only was the Report filed in an

action brought under Chapter 11, it was filed pursuant to an

explicit filing requirement provided for "under [that] title."

See 11 U.S.C. § 1106 (requiring that an examiner "file a

statement of any investigation"); see Baldwin, 46 B.R. at 316 ("§

1106 requires the Examiner to file a 'statement' of his investigation.").

Appellants offer no authority for their position that an examiner's report is not a "paper filed" for purposes of § 107, instead arguing that the Bankruptcy Court's decision was

> based upon an implicit but erroneous premise . . . that the reference to 'filing' in § 1106, with respect to an examiner's (or trustee's) report, means the same as the 'filing' in the public docket contemplated by § 107(a). The flaw in this reasoning is made evident by the very next subsection . . . which provides that the examiner shall also 'transmit a copy or a summary of any such statement to any creditor's committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.' Obviously, if the report was already public, there would be no need to require a copy be transmitted to the creditor's committee, nor any need for the court to designate any other entity to receive it. Clearly, §107(a), by itself, does not establish the public nature of the report.

(Appellant's Brief, at 12.)  Contrary to such assertions, § 107(a) does establish, by itself, the public nature of the Report.

Appellants' argument is based, it would seem, on the notion that filing alone is simply insufficient to trigger the presumption in any statutory or common law scheme.  As an initial matter, although the First Circuit does not apply a per se presumption upon filing in the conventional civil context, see Boston Herald, 321 F.3d at 180 ("'Not all documents filed with a court are considered "judicial documents."'") (quoting United

States v. Gonzales, 150 F.3d 1246, 1255 (10th Cir. 1998)), that is not an unheard-of approach, see Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161-62 (3d Cir. 1993) (holding that "the act of filing vel non . . . triggers the presumption of access"). See Boston Herald, 321 F.3d at 194 n.9 (Lipez, J., dissenting) (noting, after referencing Leucadia, that "[i]ndeed we have previously ruled that 'relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies'") (quoting Standard Financial, 830 F.2d at 409).

Congress, however, was plainly entitled to choose the approach it deemed appropriate to the bankruptcy context, within the bounds of the Constitution.  Cf. Houchins v. KQED, Inc., 438 U.S. 1, 3 (1978) (finding that there is no constitutional "right of access to government information or sources of information within the government's control" and, consequently, "[u]ntil the political branches decree otherwise, as they are free to do, the media has no special right of access . . . different from or greater than that accorded the public generally").  Appellants' argument that the presumption as defined in the Code gives the Examiner unfettered discretion to control what becomes public is simply not accurate.  The court remains empowered to determine whether a statutory exception applies, see infra, and may also be

able, in certain circumstances, to exercise its discretion further to protect countervailing privacy or safety concerns.

Here, however, one need not find that _anything_ that comes to be filed with the Bankruptcy Court would enjoy the presumption, because, as already noted, the Report must be filed.  See 11 U.S.C. § 1106.  Congress has spoken on the matter and done so clearly.  Appellants have provided insufficient grounds to find that "filing" has different meanings in two sections of the same statutory chapter.  Section 107 refers to papers filed under Chapter 11 and § 1106 could not be clearer when stating that the examiner's conclusions must be filed with the court.

Appellants' argument that the provision requiring transmission of the Report to particular parties supports a view that filing under § 1106 does not implicate § 107 is also unavailing.  It is not duplicative both to provide general public access and also to institute a requirement reflecting that particular parties have a right to prompt receipt of the document because of a recognized special interest in the matter.  And even if appellants' logic were adopted, it proves too much.  At most, the transmission requirement would be redundant.  Redundancy does not, by itself, hollow the statutory directive to "file" of all meaning in the absence of a clear alternative definition.

Moreover, the drafters of the Federal Rules of Bankruptcy Procedure have displayed an understanding that "filing" is a term

-15-

of art under the Bankruptcy Code and use alternative vocabulary
in an instance where public access would not be presumed.
Pursuant to Fed. R. Bankr. P. 1007(a)-(g), (h), debtors,
depending on the context, "shall _file_" lists of creditors, lists
of equity security holders, schedules of assets, a statement of
intention, a list of unsecured creditors, or a supplemental
schedule. (emphasis added)  But, "[a]n individual debtor shall
_submit_ a verified statement that sets out the debtor's social
security number . . . ."  Fed. R. Bankr. P. 1007(f) (emphasis
added).  The Advisory Committee Notes on the 2003 amendments to
the rule make it clear that, in so far as subsection (f) is
concerned, the "debtor submits the statement, but it is not
filed, nor is it included in the case file."

That an Examiner's Report enjoys the § 107(a) presumption is
confirmed by case law.  See In re Grand Jury Subpoena Duces
Tecum, 945 F.2d 1221, 1223 (2d Cir. 1991) ("Upon completing his
investigation, [the examiner] submitted a lengthy report to the
bankruptcy court on March 1, 1990 detailing his findings.  The
report was made available to the public."); Continental, 150 B.R.
at 337 (addressing whether fee reviewer's report falls within one
of the § 107(b) exceptions, assuming coverage by § 107(a)); Apex,
101 B.R. at 96 ("Since only the Debtors and Third Parties are
affected by the publication of any documents or information, they
shall have an exclusive opportunity to review the Examiner's

-16-

Report <u>first</u>, before it is made public.  Only their rights are at stake, and § 107(b) provides an appropriate means for protecting those rights.") (emphasis in original); <u>Baldwin</u>, 46 B.R. 314 (taking up the question of access to the underlying investigative materials relied on by the examiner and not questioning the accessibility of the report itself); <u>see also In re Revco D.S., Inc.</u>, 1990 Bankr. LEXIS 2847 (Bankr. N.D. Ohio, Dec. 31, 1990).

In sum, while "[s]ection 107 does not extend to papers that are not filed in a case, such as pretrial discovery material and other materials that are not filed, or the documents an examiner may review in making a report to the court," 2 Collier on Bankruptcy § 107.02[1] (15th rev. ed. 2005), it does apply to the Report itself.

### C.  Overcoming the Presumption through Exceptions

Section 105(a) of Chapter 11 provides the bankruptcy court with the discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  But, "any relief sought under the section must be in aid of authority exercised by the court pursuant to some other provision of the Code."  <u>In re Robert Landau Associates, Inc.</u>, 50 B.R. 670, 674 (Bankr. S.D.N.Y. 1985).  The relevant provision of the Code for determining whether the presumption of public access may be overcome is § 107(b):

(b) On request of a party in interest, the bankruptcy

-17-

court shall, and on the bankruptcy court's own motion,
the bankruptcy court may –

>    (1) protect an entity with respect to a trade
>    secret or confidential research, development, or
>    commercial information; or

>    (2) protect a person with respect to scandalous or
>    defamatory matter contained in a paper filed in a
>    case under this title [11 U.S.C. § 101, et seq.].

11 U.S.C. § 107(b).

The relevant Bankruptcy Rule provides that

> On motion or on its own initiative, with or without
> notice, the court may make any order which justice
> requires (1) to protect the estate or any entity in
> respect of a trade secret or other confidential
> research, development, or commercial information, (2)
> to protect any entity against scandalous or defamatory
> matter contained in any paper filed in a case under the
> Code, or (3) to protect governmental matters that are
> made confidential by statute or regulation.  If an
> order is entered under this rule without notice, any
> entity affected thereby may move to vacate or modify
> the order, and after a hearing on notice the court
> shall determine the motion.

Fed. R. of Bankr. P. 9018.

The presumption against nondisclosure remains a robust one.
"Motions to seal pleadings and other documents are disfavored as
a general rule, and should be entered only when actually
necessary to protect a party from harm."  In re Sherman-Noyes &
Prairie Apartments Real Estate, 59 B.R. 905, 909 (Bankr. N.D.
Ill. 1986) (citing 11 U.S.C. § 107(b)(2) and Fed. R. Bankr. P.
9018); see In re Analytical Systems, Inc., 83 B.R. 833, 835
(Bankr. N.D. Ga. 1987) ("Based on Section 107 and the strong

precedent of federal case law, this court concludes that sealing judicial records is appropriate only in very limited situations."); In re EPIC Associates V, 54 B.R. 445, 448 (Bankr. E.D. Va. 1985) ("It is a highly unusual and extraordinary remedy for the Court to seal the records in any case because of the generally-recognized rule of law that the public has a right to know.").  The more specific question here is whether the Bankruptcy Court correctly ruled that there was an insufficient basis to find that the Report contained "scandalous or defamatory matter" protected from public view by § 107(b)(2).

The Bankruptcy Court determined that appellants, in order to enjoy the protection of § 107(b)(2), must demonstrate that material in the Report is untruthful.  Appellants respond that they need only demonstrate that it will affect their reputation in the community.  In taking up this issue, I first note that the statutory directive provided by § 107(b) is not nearly as clear as that provided by § 107(a).  It has been observed that

> [a]lthough the language of subsection 107(b) mirrors that of former Rule 918 of the Federal Rules of Bankruptcy Procedure, the procedural structure of section 107 does not have a counterpart in the Bankruptcy Act of 1898.  Thus, bankruptcy courts turned to analogous nonbankruptcy cases to implement this new congressional mandate.  Unfortunately, the divergent results produced by this practice have blurred the distinction between the common law right of public access and the First Amendment right.  As a result, little uniformity exists in the application of section 107.

Bodoh & Morgan, supra, at 80-81.

There is limited discussion in the case law regarding §
107(b)(2).  For instance, in Sherman-Noyes, the court took up §
107(b)(2), but did not define "scandalous or defamatory" with
great precision.  Instead, the court simply found that "[n]o
reasonable person would be caused to alter any opinion . . . on
the basis of the statements made in the context in which they
appear."  Sherman-Noyes, 59 B.R. at 909; see In re Commodore
Corp., 70 B.R. 543, 546 (Bankr. N.D. Ind. 1987).  This could, on
its face, support appellants' argument that to satisfy §
107(b)(2) they need not establish that the information is untrue,
only that it would alter the opinion of somebody in the
community.

Appellants' argument can be distilled to a standard that
information that is potentially untrue -- and which would alter
the opinion of someone in the community of them -- should be
sealed.  Again, appellants' argument proves too much.  That
argument would sweep all manner of documents into its embrace,
including almost all complaints, depositions, and court
transcripts.  Although I question whether parties must themselves
establish the untruthfulness of information to receive protection
under § 107(b),[8] potential untruthfulness is not enough.  Here, I

_____

[8]I do not question that "[t]he dissemination of truthful
matter cannot be enjoined merely because the matter is
prejudicial" under § 107.  In re Whitener, 57 B.R. 707, 709

will assume that some of the material in the Report -- for example, where the Examiner highlights its preliminary nature -- is potentially untrue.  Doing so, however, does not result in the conclusion suggested by appellants.  Considering the role § 107(b)(2) plays will demonstrate why that is the case.

Early in the development of analysis of § 107(b)(2), aid was taken from Fed. R. Civ. P. 12(f).  <u>See</u> <u>Hope on behalf of Clark v. Pearson</u>, 38 B.R. 423, 424 (Bankr. M.D. Ga. 1984).  Rule 12(f) provides:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f); <u>see</u> <u>Phar-Mor</u>, 191 B.R. at 678 (citing an early precursor to Rule 12, Rule 26 of the Rules of Practice for the Courts in Equity of the United States, which "directed a judge to order expungement of any scandalous or impertinent material contained in a bill filed with the court"); Bodoh & Morgan, <u>supra</u>, at 78.

The <u>Hope</u> Court, after citing Wright & Miller's analysis of

---

(Bankr. E.D. Va. 1986).  I simply leave open the possibility that circumstances may arise where there are indications that material is potentially untrue or unreliable and is also clearly impertinent to the matter at hand or included for an improper purpose.

Rule 12(f),[9] addressed allegedly "scandalous or defamatory material" in a complaint:

> The complaint . . . alleges that Defendants may have received fraudulent transfers.  This allegation is not sufficient for the Court to order the record sealed. Fraudulent transfer actions . . . are common in bankruptcy practice, and to grant Defendants' motion because of this allegation could result in the sealing of pleadings in a number of adversary proceedings. Congress, in enacting section 107, did not contemplate such a result, and intended that the sealing of pleadings would be the exception rather than the rule.

Hope, 38 B.R. at 425.

The Phar-Mor court also touched on these concerns and, although it defined the question as "whether a reasonable person could alter their opinion of a party based on the statements in the context in which they appear," observed that "[a] person

---

[9]5C Wright & Miller, Federal Practice and Procedure 3d. § 1382 (2004):

> "[S]candalous" matter is that which improperly casts a derogatory light on someone, most typically on a party to the action.  It is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action.  Nonetheless, the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations.

> But there are several limitations on the court's willingness to strike scandalous allegations. For example, it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action.

within the courts' jurisdiction should not be subjected to scandalous or defamatory material submitted under the guise of a properly pleaded court document."  191 B.R. at 678-79; see Commodore, 70 B.R. at 546 (noting that "the statements in question were made in support of . . . allegations" as one of the bases for concluding that "no need for protection exists").  The Phar-Mor court determined § 107(b)(2) had been triggered because the complaint was misleading: "The Court concludes that a reasonable person would alter their opinion of the Defendants based on a reading of the complaint, because it contains allegations of wrongdoing against the Defendants for, in essence, the acts of [another], without explanation of the underlying rationale for filing the complaint in this fashion."  Phar-Mor, 191 B.R. at 680.

The Continental Airlines court, explaining why it was an abuse of the Bankruptcy Court's discretion to seal a fee reviewer's report in the context of § 107(b)(2), observed that

> legal recommendations and assertions are proffered
> routinely by judicial officers in cases like the one at
> bar.  If such legal recommendations and assertions,
> required to be rendered by statutory and caselaw
> authority, were sealed based on nothing more than the
> mere possibility that they contain "defamatory"
> assertions, the judicial system would be thwarted in
> its mandated responsibility to supervise litigation
> expenses.

150 B.R. at 340 (footnote omitted).

As these cases highlight, and appellees point out here, if

-23-

it were sufficient to show that reputation or opinions of the
party will potentially be altered in order to obtain § 107(b)
protection, the exception would swallow the rule in bankruptcy
cases.  In sum, I find that to implicate § 107(b)(2) in the
context of <u>potentially</u> untrue material, the information would
also have to be irrelevant, included for improper ends, or so
misleading in context as to be deemed facially inaccurate.

    Reference to the common law gives further support to such a
relevance-based definition.  Under the common law, "[i]n limited
circumstances, courts must deny access to judicial documents --
generally where open inspection may be used as a vehicle for
improper purposes."  <u>Orion Pictures</u>, 21 F.3d at 27.  "[C]ourts
have refused to permit their files to serve as reservoirs of
libelous statements for press consumption, or as sources of
business information that might harm a litigant's competitive
standing."  <u>Nixon</u>, 435 U.S. at 598.  "Section 107(b) . . .
responds to this need," <u>Orion Pictures</u>, 21 F.3d at 27, providing
courts with a statutory expression of the common law principles
recounted in <u>Nixon</u>.  <u>See</u> Bodoh & Morgan, <u>supra</u>, at 78 ("Like
trade secrets, 'the authority to protect persons from scandalous
or defamatory material has been entrusted to the courts for well
over a century.'  Therefore, subsection 107(b)(2) did not
introduce a novel concept into our jurisprudence.") (quoting
<u>Phar-Mor</u>, 191 B.R. at 678-79).  As the court in <u>Brown &</u>

Williamson Tobacco Co. v. FTC, 710 F.2d 1165 (6th Cir. 1983)
observed

> [s]imply showing that the information would harm the
> company's reputation is not sufficient to overcome the
> strong common law presumption in favor of public access
> to court proceedings and records . . . .  Indeed,
> common sense tells us that the greater the motivation a
> corporation has to shield its operations, the greater
> the public's need to know.  In such cases, a court
> should not seal records unless public access would
> reveal legitimate trade secrets, a recognized exception
> to the right of public access to judicial records.

Id. at 1179-80.

     Appellants have failed to demonstrate they deserve
protection under a "recognized exception to the right of public
access" to bankruptcy filings.  There is no indication that the
Examiner's Report functions as a "vehicle for improper purposes."
The Examiner's intentions have not been questioned.  And,
contrary to appellants' contentions, his role as an impartial
officer of the court further mitigates concerns about the motives
of including material.  See Robert Landau, 50 B.R. at 677 ("The
trustee is not a private litigant but a fiduciary with a duty to
provide information to parties in interest.").

     The fact that materials and statements upon which the
Examiner relied may have varying degrees of reliability does not
alter the analysis.  The Examiner's job was to investigate, weigh
what he found, and report on it.  He has done so, carefully
noting the limitations of the Report and emphasizing where

further work needs to be done.  In the absence of any indication that the material in the Report serves an improper end or is demonstrably untrue, I cannot find that the Bankruptcy Court erred when it decided that the Report does not fall within a statutory exception.

In any event, coverage by the exceptions provided under § 107(b) should not mechanically lead to wholesale sealing of the Report.  Courts must protect a party from the objectionable material in a manner that is narrowly tailored to comport most closely with the presumption of access.  This is the approach under the Code, as well as a constitutional or common law paradigm.  Appellants have not specified which portions of the Report are specifically defamatory or scandalous and how they might be redacted.  It must be assumed, then, that their argument rests on a generalized allegation that the Report offers an unfavorable view of their activities.  (See Appellant's Brief, at 7 ("The report paints a harsh picture of alleged fraud, misappropriation, and other misconduct.").)  As stated above, however, in the absence of any indication that the Report's passages relating to appellants are somehow irrelevant to matters about which the Examiner was asked to report or that the Report is simply a "guise" for improper ends, I find no basis to seal the Report and no basis to find that the Bankruptcy Court erred

in its determination.[10]  <u>Cf.</u> <u>In re Cendant Corp.</u>, 260 F.3d 183, 194 (3d Cir. 2001) ("In order to override the common law right to access, the party seeking the closure . . . 'bears the burden of that the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'  In delineating the injury to be prevented, specificity is essential.") (citations omitted).

Appellants attempt to draw a distinction between this case, where the Examiner investigated prepetition actions taken by parties no longer in control of the company, and cases cited by appellee-MediaNews, where the investigation covered practices before and after the petition.  Such a distinction can be identified, but it is not one warranting the different result suggested by appellants.  The statutory scheme enacted by

---

[10]The level of discretion a court has in the enforcement of § 107(b) is not entirely clear. <u>Compare</u> <u>Orion Pictures</u>, 21 F.3d at 27 ("[I]f the information fits any of the specified categories [of § 107(b)], the court is required to protect a requesting interested party and has no discretion to deny the application.") (citing 2 Collier on Bankruptcy § 107.01); <u>with</u> <u>In re Sherman-Noyes & Prairie Apartments Real Estate</u>, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986) ("B.R. 9018 provides the procedure for invoking the court's power under 11 U.S.C. § 107.  A motion under Rule 9018 is addressed to the sound discretion of the court.") (citing <u>Hope on behalf of Clark v. Pearson</u>, 38 B.R. 423 (Bankr. M.D. Ga. 1984)).
    Here I find that the Bankruptcy Court properly determined that an exception does not apply.  Thus, to the extent such a finding is deemed discretionary, I do not find abuse in the use of discretion in the Bankruptcy Court's determination.

Congress in the bankruptcy realm embraces the presumption of public access while also attempting to protect the overarching goals of the Code.  There might be concerns about the ability of a company to emerge from bankruptcy successfully if confidential commercial information were revealed or if the proceedings were to permit irrelevant defamatory statements to surface about the company and its officers.  Here, as appellants emphasize, there has been a clean break between the officers and the company.  But the avenues a debtor may pursue to recover for arguably improper activity by its former officers and their associates remains of concern to the mission of the Bankruptcy Court.  Therefore, although privacy concerns of appellants are certainly to be considered, they do not here affect the proper functioning of the proceedings themselves.[11]

Appellants also raise concerns about the effect of the material on their ability to receive a fair trial.  Generalized concerns about publicity surrounding the case and the publication of certain allegations are insufficient on their own to warrant closure.  "[P]retrial publicity, even if pervasive and

_____

[11]The smooth functioning of the proceedings would not, by itself, warrant sealing a public document.  See 9A Am. Jur. 2d Bankruptcy § 988 ("The dissemination of truthful matter contained in bankruptcy records cannot be enjoined merely because the matter is prejudicial, or because rehabilitation of the debtor might be facilitated thereby.") (footnotes omitted).  I simply highlight that the distinction drawn by appellants -- if considered at all -- adds little weight to the sealing argument.

concentrated, cannot be regarded as leading automatically in every kind of criminal case to an unfair trial." Nebraska Press Assoc. v. Stuart, 427 U.S. 539, 565 (1976); see In re Perry, 859 F.2d 1043, 1050 (1st Cir. 1988) ("The Supreme Court . . . has held that a general restriction on publication could not be justified by the danger that it might impair a defendant's right to a fair trial.  If prejudice of the magnitude described in Nebraska Press Ass'n to an interest as paramount as the Sixth Amendment right to a fair trial cannot justify a protective order, then much less will mere embarrassment to a defendant stemming from disclosure of the vigorous defense of an unpopular cause, or even the possible effect on a still hypothetical criminal prosecution, justify this order.")  Appellants have provided the court with no basis to find that their right to a fair trial at some future time will be irretrievably infringed upon by publication now.

The proper application of § 107(b)(2) and weighing of the competing interests under that paradigm forecloses the need to duplicate inquiry under a similar common law scheme.  In any event, I am of the view that even if a traditional common law approach were taken, the result would not change.  See Boston Herald, 321 F.3d at 204 (Lipez, J., dissenting) ("[A]pplication of the common law presumption of access imposes a heavy burden on the party seeking to seal judicial documents.").  "The decision

as to [common law] access is one best left to the sound
discretion of the trial court, a discretion to be exercised in
light of the relevant facts and circumstances of the particular
case." Nixon, 435 U.S. at 599 (quoted by Boston Herald, 321 F.3d
at 190); see Cendant, 260 F.3d at 197.  For the reasons already
recounted, if I were to view this case solely through a common
law lens distinct from the statutory charge under which the
Bankruptcy Court functions, I still would not find that the
Bankruptcy Court abused its discretion.

     The First Amendment -- if implicated at all in this context
-- offers even less promise for appellants.  See Cendant, 260
F.3d at 198 n.13 ("The First Amendment right of access requires a
much higher showing than the common law right of access before a
judicial proceeding can be sealed.").  "A court could meet the
'stringent' First Amendment standard for sealing documents only
by articulating 'an overriding interest based on findings that
closure is essential to preserve higher values and is narrowly
tailored to serve that interest.'" Boston Herald, 321 F.3d at 182
(quoting In re Providence Journal Co., 293 F.3d 1, 11 (1st Cir.
2002)).  Appellants' generalized interest in avoiding
embarrassment and protecting a measure of privacy, as well as
their inchoate concerns regarding potential effects on future
trials are insufficient.  Cf. Boston Herald, 321 F.3d at 206
(Lipez, J., dissenting) ("Under well-established precedent, a

defendant's privacy interests alone cannot preclude the attachment of a public right of access to judicial documents in the first instance."); Analytical Systems, 83 B.R. at 836 ("The federal courts have uniformly held that [embarrassment] is not a sufficient basis to justify sealing court records in the face of the express and important policy of public access to court records."); see also Foundation for New Era Philanthropy, 1995 WL 478841, at *4 ("[Section [§ 107(b)] was not intended to save the debtor or his creditors from embarrassment, or to protect their privacy in light of countervailing statutory, constitutional and policy concerns.").

Additional parties have submitted briefs requesting that all or part of the Report be sealed. (See, e.g., Bowditch & Dewey/Angelini Brief, Mot. to Join Appellant's Brief; Interested Party Mem. to Seal). Questions concerning whether any of these parties has properly preserved an appellate right hover over their submissions. Moreover, it is not entirely clear that they are "parties in interest" as required by § 107(b) and defined in the Code at 11 U.S.C. § 1109(b): "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter [11 USCS §§ 1101 et seq.]." In any event, the Bankruptcy Court, in its

discretion, can protect "any entity against scandalous or
defamatory matter." Fed. R. Bankr. P. 9018. I need not resolve
the threshold party in interest procedural question because I
have considered the substantive claims of these parties and
reject them.

The additional parties contend that the allegations
regarding them are conclusory and based on potentially unreliable
sources. But, for the reasons stated above, there is no basis to
find the material is irrelevant or included for improper ends.
The Examiner's Report clearly demarcates the limitations of its
inferences. It cannot be said that the references are misleading
or demonstrably unfounded. The potential that allegations may
not be borne out, noted in the Report itself, is not sufficient
to warrant sealing in the face of the strong presumption of
public access to relevant bankruptcy filings.

More specifically, the law firm, Bowditch & Dewey, and
attorney Michael Angelini argue that the Second Circuit
"address[ed] this issue in virtually identical circumstances."
(Bowditch & Dewey/Angelini Brief at 3.) See United States v.
Amodeo, 71 F.3d 1044 (2d Cir. 1995) ("Amodeo II"). The Second
Circuit took up a law firm's request to unseal the report of "a
Court Officer appointed pursuant to a consent decree to
investigate allegations of corruption in" a labor union, Amodeo,
71 F.3d at 1047, applying a two-part analysis tracking the First

Circuit's common law approach.  The presumption of public access
was described as "weak" because the Officer's submission bore
"only a marginal relationship to the performance of Article III
functions." Id. at 1052.  Then, the court examined the
"countervailing factors to be balanced against the presumption of
access" (which were broadly construed as (1) law enforcement
concerns and judicial efficiency, and (2) privacy interests),
finding that Part 1 of the report should be sealed from public
view.  See id. at 1052-53.  Part 1 contained "unsworn"
accusations against counsel of the law firm, "some or all . . .
of doubtful veracity" and "possibly stemming in part from
apparent personality conflicts."  Id. at 1052.  Moreover, "much
of Part 1 has been rendered unintelligible as a result of
redactions."  Id.

Unlike Amodeo II, the presumption analysis here flows from a
statutory construct and not a common law analysis.  Where in
Amodeo II, the Officer "deemed it advisable to submit periodic
reports to the court," id., the Examiner was under a statutory
duty to do so.  As examined in the main text, upon filing, that
Report enjoyed a congressionally-mandated presumption of public
access that cannot be described as "weak."

The countervailing interests cited by Amodeo II are
certainly relevant to analyzing the exceptions provided by §
107(b).  Here, however, despite the preliminary nature of the

-33-

report and its inclusion of hearsay, there are no explicit
"unsworn" accusations cited by the law firm, nor any indication
that improper motives are implicated.  Moreover, there is nothing
misleading about the Report's current form, where the Examiner
references the law firm's and Mr. Angelini's legal representation
and discusses potential avenues of further investigation.  <u>See</u>
<u>id.</u> at 1052-53 (remanding the question of Part 2 -- which
"contains little unverifiable hearsay and no material that might
be described as scandalous, unfounded, or speculative" and
"basically describes [the law firm's] role as a legal advisor . .
. and consists essentially of [the individual lawyer's] own
description of that role" -- and describing the district court's
decision on remand as "an all or nothing matter" where "unsealing
or denying public access to Part 2 is within the court's
discretion").

     In sum, their argument rests on generalized concerns
regarding their reputations and their inability, because of
obligations to preserve attorney-client privileged
communications, to respond.  The fact that some of the Examiner's
questions regarding the role of counsel in relevant matters were
left unanswered because of the protection of privileged
information does not warrant excising reference to the attorneys.
<u>See</u> <u>id.</u> at 1052 ("[W]e note that the substance of a lawyer's
representation of a client generally involves a variety of

-34-

matters about which privacy is expected.  Much of that
expectation, however, is based on the existence of the attorney-
client privilege and work product immunity, neither of which
applies -- and thus have not been asserted -- in the instant
matter.")  The assertion of the privilege can, as here, be a two-
edged sword.  But the privilege is not a shield broad enough to
prevent an Examiner as a court officer charged with investigating
relevant matters from noting the impact of the privilege's
assertion on his ability to answer certain questions and
including those observations in a presumptively-public court
filing.

### IV.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court decision
providing public access to the Examiner's Report is hereby
AFFIRMED.

I do not believe there to be any meaningful likelihood of
success in further appeal by appellants and I find the interests
of the appellees and the public would be harmed by continued non-
disclosure of the Examiner's Report.  Consequently, I decline to
enter an unlimited stay of this decision pending full appellate
review.  However, because the issues considered herein are
matters of first impression in the First Circuit, in order to
afford the appellants some opportunity to protect against any
perceived harm to their interests from disclosure, I hereby STAY

disclosure of the Examiner's Report until 12 noon, Monday, May 9, 2005, to permit appellants an opportunity to seek further appellate relief.  In the absence of the some further stay by a court of competent jurisdiction, the Examiner's Report shall be filed publicly at that time in accordance with the Bankruptcy Court's order of February 9, 2005.


                              /s/ Douglas P. Woodlock

                              _____

                              DOUGLAS P. WOODLOCK
                              UNITED STATES DISTRICT JUDGE